UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Conservation Law Foundation, Inc. ) | |
| ) | Case No. _____ |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR** |
| ) | **DECLARATORY AND INJUNCTIVE** |
| ) | **RELIEF AND CIVIL PENALTIES** |
| v. ) | |
| ) | September 17, 2018 |
| Del R. Gilbert & Son Block Co., Inc. ) | |
| and Province Road Properties, LLC. ) | |
| ) | (Federal Water Pollution Control Act, |
| Defendants. ) | 33 U.S.C. §§ 1251 to 1387) |
| ) | |

## INTRODUCTION

1. This is a civil suit brought under the citizen suit enforcement provisions of the Federal

Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* ("Clean Water Act," "CWA," or "Act"),

33 U.S.C. § 1365(a). Plaintiff, Conservation Law Foundation, Inc. ("Plaintiff" or "CLF") seeks

declaratory judgment, injunctive relief, and other relief the Court deems proper to remedy

violations of the Clean Water Act by Del R. Gilbert & Son Block Co., Inc. ("Gilbert & Son") and

Province Road Properties, LLC ("Province Road Properties") (hereinafter, collectively,

"Defendants"). The Defendants' violations are twofold. First, Defendants have discharged and

continue to discharge polluted stormwater and process wastewater associated with industrial

activities at their sand and gravel and concrete facility in Laconia, New Hampshire into waters of

the United States. Defendants have also failed to comply with applicable U.S. Environmental

Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES")

permits, including the Multi-Sector General Permit for Stormwater Discharges Associated with

1

Industrial Activity ("Multi-Sector General Permit" or "MSGP") and the individual NPDES permit that is required for discharges of process wastewater.

2. Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person [. . .] unlawful" except when in conformance with enumerated statutory provisions, including the requirement that a discharger obtain and comply with a NPDES permit under Section 402 of the Act. *See* 33 U.S.C. §§ 1311(a), 1342.

3. Stormwater that is discharged from industrial activities requires a NPDES permit. When stormwater or snowmelt comes into contact with activities at industrial facilities, the runoff picks up pollutants and transports them to nearby storm sewer systems or to rivers, lakes, and coastal waters. As a result, EPA's NPDES program includes the MSGP, which covers stormwater discharge associated with 29 different categories of industrial activity. Discharges of process wastewater are not covered by the MSGP and therefore require coverage under an individual NPDES permit.

4. Defendants have operated and continue to operate a facility at 427 Province Road, Laconia, NH 03246.

5. Upon information and belief, Defendants engage in industrial activities, which include cutting, crushing, storing, moving, and processing stone, gravel, crushed stone, and other materials outside or otherwise exposing them to the elements; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off the Facility thereby tracking pollutants off-site.

6. Upon information and belief, Defendants also use water at the Facility, which during manufacturing or processing comes into direct contact with or results from the production or use of raw material, intermediate product, finished product, byproduct, or waste product.

7.    Defendants' industrial activities fall within enumerated categories of industrial activity subject to the Multi-Sector General Permit. These activities generate stormwater pollution that is collected, channeled, and conveyed into the Durkee Brook, which is a tributary of Winnisquam Lake.

8.    Upon information and belief, Defendants' use of water in industrial processes, including but not limited to washing or spraying sand and gravel and crushed stone and spraying water on rock crushing and sorting machinery, generates process wastewater.

9.    The discharge of process wastewater is not covered under the Multi-Sector General Permit and can only be permitted by an individual NPDES permit, thus Defendants' past and on-going discharges of process wastewater can only be authorized by an individual NPDES permit.

10.    Defendants' industrial activities generate stormwater pollution that is collected, channeled, and conveyed into the Durkee Brook, a water of the United States within the Merrimack River watershed.

11.    The Durkee Brook is a tributary of Winnisquam Lake, which flows into the Winnipesaukee River and the Atlantic Ocean –all of which are also waters of the United States.

12.    Defendants' past and ongoing discharges of stormwater associated with industrial activity have not been, and are not, authorized by an individual NPDES permit or the applicable MSGP, including the 2015 MSGP.

13.    Defendants' past and on-going discharges of process wastewater have at no time prior to this complaint been authorized by an individual NPDES permit.

14.    Defendants have operated and continue to operate the Facility in violation of the Clean Water Act.

**JURISDICTION AND VENUE**

15.     Plaintiff brings this civil suit under the citizen suit enforcement provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

16.     On July 17, 2018 Plaintiff notified Defendants of its intention to file suit for violations of the Clean Water Act, in compliance with the statutory notice requirements under Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and the corresponding regulations located at 40 C.F.R. § 135.2. A true and accurate copy of Plaintiff's Notice Letter (the "Notice") is appended as Exhibit A.

17.     More than sixty days have elapsed since Plaintiff served the Notice on Defendant, during which time neither EPA nor the State of New Hampshire has commenced a court action to redress the violations alleged in this Complaint. 33 U.S.C. § 1365(b)(1)(B).

18.     Venue is proper in the U.S. District Court for the District of New Hampshire pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

19.     Plaintiff, CLF, is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street, Boston, MA 02110. CLF has over 4,000 members throughout New England and over 500 members in New Hampshire. For fifty years, CLF has worked to protect the health of New England's waterways, including addressing the significant water quality impacts of stormwater pollution. CLF members use and enjoy New England's waterways for recreational and aesthetic purposes, including boating, swimming,

fishing, hunting, and sightseeing. The waters used and enjoyed by CLF's members include, but are not limited to, the waters of the United States affected by Defendants' unpermitted discharges of pollutants. CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

20.     Defendants Del R. Gilbert & Son Block Co., Inc and Province Road Properties, LLC are corporations in good standing organized under the laws of New Hampshire, with a principal place of business at 427 Province Road, Laconia, NH 03246.

21.     Brian Gilbert is the President of Del R. Gilbert & Son Block Co., Inc. Brian Gilbert and Joni L. Gilbert are principal Members of Province Road Properties, LLC. William Philpot Jr. is the Registered Agent for both entities.

22.     Defendants operate a construction sand and gravel and concrete facility at 427 Province Road, Laconia, NH 03246. Defendants maintain, operate, and are responsible for industrial activities at the Facility.

23.     Defendants' unauthorized discharges of pollutants into the Durkee Brook adversely affect CLF members' use and enjoyment of those water resources. The interests of CLF's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act and the National Pollutant Discharge Elimination System.

24.     The relief sought in this action will redress these harms. The unlawful acts and omissions described herein have and will continue to irreparably harm Plaintiff's members, for which harm they have no other plain, immediate, or adequate remedy at law.

**STATUTORY AND REGULATORY BACKGROUND**

25.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), strictly prohibits the discharge of any pollutant into waters of the United States from a point source, unless the discharge complies with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid NPDES permit issued pursuant to Section 402(p) of the Act, 33 U.S.C. § 1342(p).

26.     Section 502(14) of the Clean Water Acts defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Under the regulations that implement the Clean Water Act, the definition of "discharge of a pollutant" includes "additions of pollutants into waters of the United States from: surface runoff which is collected or channeled by man[.]" *See* 40 C.F.R. § 122.2.

27.     In 1987, Congress amended the Clean Water Act to require that facilities engaged in certain industrial activities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); *see also* 55 Fed. Reg. 47,990, 47,991-93 (Nov. 16, 1990). Accordingly, Section 402 of the CWA directed EPA to develop a phased approach for regulating stormwater discharges under the NPDES permitting program. 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

28.     In 1990, in furtherance of the requirements of Section 402, EPA promulgated regulations, set forth at 40 C.F.R. § 122.26, requiring regulated industrial dischargers to submit applications for NPDES permit coverage no later than October 1, 1992. In establishing these regulations,

6

EPA relied upon significant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47,990, 47,991 (Nov. 16, 1990) (codified at 40 C.F.R. § 122).

29.     In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities. EPA reissued the MSGP in October 2000, September 2008, and most recently in June 2015. *See* Final Reissuance of NPDES Storm Water MSGP for Industrial Activities, 65 Fed. Reg. 64,746 (Oct. 30, 2000); Final NPDES General Permit for Stormwater Discharges from Industrial Activities, 73 Fed. Reg. 56,572 (Sept. 29, 2008); Final NPDES General Permit for Stormwater Discharges from Industrial Activities, 80 Fed. Reg. 34,403 (June 16, 2015).

30.     To discharge stormwater lawfully, industrial dischargers like Defendants who operate facilities subject to regulation must obtain coverage under the Multi-Sector General Permit and comply with its requirements or obtain coverage under an individual NPDES permit.

31.     Under the MSGP, industrial dischargers must file with EPA a complete and accurate notice of intent ("NOI") to be covered by the MSGP and develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") identifying and controlling sources of pollutants associated with industrial discharges from the subject facility.

32.     The 2015 MSGP required each subject facility to file its NOI for coverage by September 2, 2015.

33.     The permit has several key changes from the prior MSGP, including but not limited to, requiring disclosures in the NOI to be in electronic format, increasing the amount of detail regarding stormwater outfalls and receiving waters that a discharger must include in its NOI to

receive permit coverage, and modifying effluent limitation requirements, inspections, corrective actions and other industry-specific requirements.

34.     Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person . . . who is alleged to be in violation of (A) an effluent standard or limitation…or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

35.     Such action under Section 505(a) of the Act includes an action seeking remedies for unauthorized discharges in violation of Section 301 of the Act, 33 U.S.C § 1311, as well as for failing to comply with one or more permit conditions in violation of Sections 402 and 505(f) of the Act, 33 U.S.C. §§ 1342, 1365(f).

36.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all Clean Water Act violations that occurred from January 12, 2009 through November 2, 2015, and up to  $53,484 per day per violation for all Clean Water Act violations occurring after November 2, 2015 and assessed on or after January 15, 2018, pursuant to section 309(d) of the Act, 33 U.S.C. § 1319(d), and 40 C.F.R. §§ 19.2, 19.4.

## FACTS

37.     Upon information and belief, since at least 1965, Defendants have operated and continue to operate a construction sand and gravel and concrete facility located at 427 Province Road, Laconia, NH 03246.

38.      The primary activities at the Facility, which involve the processing of construction sand and gravel (Standard Industrial Classification 1442) and concrete, gypsum, and plaster products (Standard Industrial Classification 3271-3275) are among the sectors of industrial activity

covered by the Multi-Sector General Permit. *See* ENVTL. PROT. AGENCY, MULTI-SECTOR GENERAL PERMIT FOR STORMWATER DISCHARGES ASSOCIATED WITH INDUSTRIAL ACTIVITY (MSGP), at Appen. D (June 5, 2015), [hereinafter 2015 MSGP]; *see also* 40 C.F.R. § 122.26(b)(14).

39.     Upon information and belief, Defendants have engaged and continue to engage in the following industrial operations at the Facility: storing, moving, and processing sand and gravel and other materials outside, or otherwise exposing them to the elements; operating, maintaining, and storing heavy machinery and equipment outdoors; and driving vehicles on and off the Facility via driveways and immediate access roads. Defendants' processing of sand and gravel products, upon information and belief, includes washing or spraying those products with water.

40.     The sand and gravel piles and areas of industrial activity at the Facility are uncovered, and therefore exposed to precipitation. Upon information and belief, the sand and gravel piles, machinery and equipment, and paved surfaces at the Facility also are subject to being sprayed down with water during certain conditions.

41.     Upon information and belief, the sources of pollutants associated with the industrial activities at the Facility include but are not limited to: sand and gravel piles; machinery and equipment; loading and unloading areas; maintenance areas; and onsite re-fueling of machinery.

42.     Upon information and belief, pollutants present in stormwater discharged from the Facility include, but are not limited to: dust, total suspended solids (TSS), total dissolved solids (TDS), fine particulate matter, iron, diesel/gas fuel, oil, heavy metals, trash, and other pollutants associated with the Facility's operations.

43.     Upon information and belief, EPA considers precipitation above 0.1 inches in a 24 hour period a measurable precipitation event. *See* 40 C.F.R. § 122.26(c)(1)(i)(E)(6).

44.    The 2015 Multi-Sector General Permit specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. 2015 MULTI-SECTOR GENERAL PERMIT, at Part 2.1.2.1.

45.    Upon information and belief, during precipitation events and instances of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff associated with the Facility's industrial activity.

46.    Upon information and belief, stormwater runoff from the Facility has been and continues to be conveyed by the operation of gravity via site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and/or other conveyances to the Durkee Brook and its associated tributaries, wetlands, and downstream receiving waters, including the Winnipesaukee River.

47.    This runoff carries pollutants from several sources, including but not limited to: sand and gravel piles that are open to the elements, machines and equipment left outdoors, and vehicles driven on and off the Facility.

48.    Durkee Brook is located within the Merrimack River watershed. It flows into Winnisquam Lake and to the Atlantic Ocean by way of the Merrimack River.

49.    Durkee Brook and Winnisquam Lake are "waters of the United States" as defined in 40 C.F.R. § 122.2, and therefore also "navigable waters" as defined in 33 U.S.C. § 1362(7).

50.    Defendants discharge directly and indirectly into Durkee Brook.

51.    EPA has designated Durkee Brook as impaired under Section 303(d) of the Clean Water Act.

52.     Upon information and belief, discharged water and stormwater runoff from the Facility are not treated to remove the pollutants—referenced above in Paragraph 42—before it is discharged into Durkee Brook.

53.     Defendants have failed to obtain coverage under the 2015 MSGP, or any other valid NPDES permit for the Facility.

54.     Upon information and belief, as of September 17, 2018 Defendants are discharging pollutants in violation of the Clean Water Act as evidenced by the following:

(a) Defendants have not filed an electronic NOI as required by the 2015 MSGP;

(b) Defendants have not developed, implemented, and filed with the NOI a Stormwater Pollution Prevention Plan that meets the requirements of the 2015 MSGP Part 5; and

(c) Defendants have failed to install and implement control measures to meet numeric and non-numeric effluent limitations in Part 2.1 of the 2015 MSGP.

55.     Accordingly, Defendants are not authorized to discharge from the Facility under the 2015 Multi-Sector General Permit because it has not met all requirements of Part 1.2 of the 2015 MSGP.

56.     In addition to their unpermitted stormwater discharges, upon information and belief, Defendants' Facility also uses water in its industrial processes, including but not limited to, washing and spraying sand and gravel piles and machinery and equipment; loading and unloading areas; and maintenance areas.

57.     Upon information and belief, process wastewater from the Facility is and has been discharged into waters of the United States.

58.     As of September 17, 2018, Defendants do not hold a valid individual NPDES permit authorizing them to discharge process wastewater.

## CLAIMS FOR RELIEF

### First Cause of Action:
### Unauthorized Discharge of Pollutants into Waters of the United States

59.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

60.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

61.     In order to be authorized to lawfully discharge under the MSGP, a regulated industrial discharger's facility must meet requirements set forth in Part 1.2.1 of the 2015 MSGP. These requirements include:

(a) Establishing eligibility for coverage under the permit;

(b) Selecting, designing, installing, and implementing control measures in accordance with 2015 MSGP Part 2.1;

(c) Developing a complete and accurate SWPPP in accordance with the 2015 MSGP's requirements; and

(d) Filing a complete and accurate NOI to seek coverage under the 2015 MSGP.

62.     Defendants are industrial dischargers with primary SIC codes 1442, 3271-3275 and/or another activity listed under Appendix D of the Multi-Sector General Permit or 40 C.F.R. § 122.26(b)(14); therefore Defendants are obligated to apply for coverage under the MSGP or obtain other legal authorization for their Facility.

12

63.     Defendants' industrial activities at the Facility have resulted in, and continue to result in, "stormwater discharge associated with industrial activity," within the meaning of 40 C.F.R. § 122.26(b)(14), to waters of the United States on—upon information and belief—every day of precipitation greater than 0.1 inches and every instance of snowmelt.

64.     Defendants' discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

65.     Defendants' industrial stormwater discharges at the Facility are "point source" discharges into waters of the United States within the meaning of 33 U.S.C. § 1362(14).

66.     Industrial stormwater discharges at the Facility have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

67.     Defendants have discharged and continue to discharge industrial stormwater without authorization under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

68.     Each and every day on which Defendants have discharged and continue to discharge industrial stormwater from the Facility without authorization under a valid NPDES permit constitutes a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**Second Cause of Action:**
**Failure to Obtain and Comply with an Individual NPDES Permit for Industrial Discharges**

69.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

70.     Process wastewater discharges are not covered under the MSGP—rather, they require individual NPDES permit coverage.

71.     Defendants are and have been required to obtain permit coverage for the process wastewater discharges from their Facility by seeking and obtaining an individual NPDES permit, pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

72.     Defendants have failed and continue to fail to obtain permit coverage under an individual NPDES permit for process wastewater discharges from their Facility.

73.     Each and every day on which Defendants have not obtained individual NPDES permit coverage for their Facility constitutes a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

### Third Cause of Action:
### Failure to Obtain a Permit for Industrial Stormwater Discharges

74.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

75.     Defendants have been required to obtain permit coverage for their Facility under several of the MSGPs issued by EPA, including the 2008 and 2015 MSGPs, or by seeking and obtaining an individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

76.     Each and every day on which Defendants have not held a general or individual NPDES permit for their Facility constitutes a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

### Fourth Cause of Action:
### Failure to Comply with a Permit for Industrial Stormwater Discharges

77.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

14

78.     Regulated industrial discharges are required at a minimum to comply with the requirements of the MSGP, which include but are not limited to:

(a) Developing and implementing a complete and accurate Stormwater Pollution Prevention Plan;

(b) Submitting a complete Notice of Intent to be covered by the MSGP, accompanied by a complete and accurate SWPPP;

(c) Implementing required stormwater control measures;

(d) Conducting facility inspections in accord with the MSGP (MSGP at pt. 3);

(e) Conducting site inspections and submitting the results thereof to EPA (*id.* at pt. 3);

(f) Monitoring and analyzing stormwater samples consistent with procedures set forth in the Multi-Sector General Permit, including, but not limited to, benchmark monitoring and monitoring for discharges to an impaired water (*id.* at pt. 6, app. B);

(g) Complying with reporting and recordkeeping requirements, including, but not limited to, reporting of any noncompliance during an applicable time period (*id.* at pt. 7); and

(h) Satisfying sector-specific requirements such as requirements pertaining specifically to concrete and gypsum product manufacturers and non-metallic mineral mining and dressing products (*id.* at pt. 8, subpts. E, J).

79.     Defendants have failed, and continue to fail, to comply with the requirements of the Multi-Sector General Permit, including, upon information and belief, each of the requirements described above.

80.     Each and every day on which Defendants have failed to comply with the Multi-Sector General Permit is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**RELIEF REQUESTED**

81.     Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Declare Defendants to have violated and to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for their Facility's unlawful and unauthorized discharges of pollutants to waters of the United States;

(b) Declare Defendants to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to obtain coverage under the 2015 Multi-Sector General Permit for the Facility;

(c) Declare Defendants to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to comply with all applicable requirements of the Multi-Sector General Permit for the Facility;

(d) Enjoin Defendants from discharging pollutants from the Facility into waters of the United States except as authorized by and in compliance with a NPDES Permit;

(e) Order Defendants to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for the Facility;

(f) Order Defendants to apply immediately for an individual NPDES permit for their Facility applicable to process wastewater;

(g) Order Defendants to pay civil penalties of $37,500 per day per day per violation for all Clean Water Act violations occurring between January 12, 2009 and November 2, 2015; and up to $53,484 per day per violation for all Clean Water Act violations occurring after November 2, 2015 and assessed on or after January 15, 2018, pursuant

16

to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.2, 19.4;

(h)  Order Defendants to take appropriate actions to remedy harm caused by Defendant's noncompliance with the Clean Water Act;

(i)  Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

(j)  Award any such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff does not request a jury trial.

Respectfully submitted this 17th day of September, 2018,

CONSERVATION LAW FOUNDATION, INC.,

By its attorney,

/s/ Zachary K. Griefen
Zachary K. Griefen, Esq.
NH Bar No. 265172
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
802.223.5992 x4011
zgriefen@clf.org


/s/ Caitlin Peale Sloan
Caitlin Peale Sloan, Esq.*
Conservation Law Foundation
62 Summer Street
Boston, Massachusetts 02110
(617) 850-1770
cpeale@clf.org
*Pro Hac Vice Application Filed Concurrently with Complaint

17